UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JIMMY L. BANKS, | ) |
| | ) |
| Plaintiff, | ) Case No.2:11-cv-00648-GMN-CWH |
| vs. | ) |
| | ) **ORDER** |
| FREDDIE MAC aka FEDERAL HOME | ) |
| LOAN MORTGAGE CORPORATION, a | ) |
| Virginia corporation, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

This action arises out of the foreclosure proceedings initiated against the property of Plaintiff Jimmy L. Banks, who is appearing *pro se*. Pending before the Court are Defendants Ocwen Loan Servicing, LLC ("Ocwen") and the Cooper Castle Law Firm's ("CCLF") Motion for Summary Judgment,[1] (ECF No. 148), and Motion to Expunge Lis Pendens, (ECF No. 147). Plaintiff opposed both motions. (ECF No. 154, 155).[2] Defendants replied. (ECF No. 165).

For the reasons discussed below, the motions are DENIED.

**I.    BACKGROUND**

This case arises from an alleged wrongful foreclosure. The facts giving rise to this case are set out more particularly in this Court's prior Orders. (Order Grant'g Mot. to Dismiss, ECF

---

[1] In an effort to facilitate a speedy resolution of this case, the Court conducted a preliminary review of the motion and noted several evidentiary defects, which would prevent timely resolution of the matter. (ECF No. 151). The Court allowed Defendants an opportunity to cure those noted defects. (*Id.*) Defendants filed documents purporting to cure the noted deficiencies. (ECF No. 156). The Court allowed Plaintiff an opportunity to respond to the new filing. (ECF No. 157). In response, Plaintiff filed an opposition to exclude the documents attempting to cure the noted deficiencies arguing that the exhibits and witnesses were not disclosed in discovery. (ECF No. 162). Defendants filed a reply. (ECF No. 164).

[2] The Court has already denied Plaintiff's Motion to Strike, ECF No. 153, but considers the arguments in determining whether the "proffered material may properly be relied upon." *United States v. Crisp*, 190 F.R.D. 546, 550–51 (E.D. Cal. 1999) (internal citations omitted).

Nos. 33, 101). The facts pertinent to this motion are that Plaintiff filed an Amended Complaint on December 12, 2011 alleging thirteen claims for relief against Defendants. On March 20, 2013, the Court granted Defendants' Motion to Dismiss as to all claims against Defendants Ticor Title of Nevada, Freddie Mac, Merscorp, Inc., and Mortgage Electronic Registration Systems, Inc. with prejudice. (ECF No. 101).

The only remaining issue left for adjudication was a single claim for statutory wrongful foreclosure against Ocwen and CCLF under NRS § 107.080(3). (*Id.* at 7). As to that claim, the Court held that Plaintiff had adequately stated a statutory wrongful foreclosure claim by alleging that "he did not receive a mailed copy of the notice of default and trustee's sale," prior to the filing of the Notice of Default. (*Id.* at 6). Thus, the Court held that "Plaintiff [had] pled a plausible claim for statutorily defective foreclosure against CCLF, as the trustee who filed the Notice of Default and Notice of Trustee's Sale, and Ocwen, as the beneficiary." (*Id.* at 7).[3]

As to statutory wrongful foreclosure, Plaintiff's allegations related to whether certain statutorily mandated notices were properly recorded, and whether he personally received the statutorily mandated notices. (*See* Amended Compl., ECF No. 34, at ¶ 86-102). Initially, Plaintiff alleged that "the parties issuing the notice of default and/or issuing a notice of trustee's sale on the property were not the proper parties to do so because none of the parties were the beneficiary, the successor in interest to the beneficiary, or the trustee appointed by the lender." (*Id.* at ¶ 86). To that end, Plaintiff asserted that Defendants filed the Notice of Default before being named Trustee. (*Id.* at ¶ 100). Plaintiff went on to allege that the Defendants did not properly record the Notice of Substitution of Trustee, (*id.* at ¶ 101), and Defendants failed to provide Plaintiff with statutorily mandated notice of the Notice of Substitution of Trustee,

---

[3] To the extent that any claim relied on legal theories that MERS is a sham beneficiary, or that securitization voids the deed of trust, irreparably splits the note, or extinguishes the note, the Court dismissed the claims with prejudice.

Notice of Default, or Notice of the Trustee's Sale. (*Id.* at 102).

Defendants now seek summary judgment arguing that "the facts are undisputed that Defendants complied with the foreclosure requirements set forth in NRS Chapter 107." (ECF No. 148 at 3).

## II.   **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Id.*

A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  When the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

## III.  DISCUSSION

The Court first must note that this case has been unnecessarily complicated and protracted due to the lack of diligence exhibited by the Defendants and their counsel. What was otherwise a straight-forward, simple statutory wrongful foreclosure case has become a procedural quagmire because of Defendants' counsel's failure to follow the Federal Rules of Civil Procedure and the Court's Rules of Local Practice. Rather than being able to adjudicate this otherwise simple case in a timely and efficient manner, Defendants and their counsel were required to show cause as to why they should not be sanctioned and the Court has had to to caution and reprimand them for their recklessness. The Court has already denied Defendants' first summary judgment motion because of what can only be described as careless lawyering. The Court has allowed this second summary judgment motion in the hope that the case can be resolved without sending this very simple case to a jury.

The Court conducted a cursory preliminary review of this motion which revealed clear and blatant evidentiary issues - affidavits were proffered to authenticate exhibits but the affiant's identities were not provided in any way. Thus, to expedite resolution of the matter, the Court notified the Defendants of the facially obvious deficiencies, allowed Defendants a single opportunity to correct those deficiencies only, extended deadlines for Plaintiff's opposition and Defendants' reply, and reset the trial date. The Court did not hold that merely identifying the

affiants would cure all authentication defects, but rather that these glaring deficiencies alone would prevent resolution of the matter in Defendant's favor. That these delays and procedural missteps were caused by Defendants, one of whom is a law firm and both of whom are represented by counsel is particularly troubling. More troubling is that Defendants' other proffered exhibits also present authentication issues.

As Defendants have proffered several documents in support of its summary judgment motion, and Plaintiff has objected to nearly all the exhibits, the Court first determines what evidence it may consider in evaluating this motion. Then, the Court will consider only the admissible evidence in determining whether there exist any genuine issues of material fact precluding summary judgment and whether Defendants are entitled to judgment as a matter of law.

### A.  Authenticated Documents

In determining a summary judgment motion, the Court may only consider admissible evidence. Fed. R. Civ. P. 56(e), *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). To be admissible, a proper foundation must be laid and documents must be authenticated. *Id.*, *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987). A document may be authenticated by personal knowledge "by a witness who wrote it, signed it, used it, or saw others do so." *Orr*, 285 F.3d at 774 n.8 (citing references omitted). Documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of [Fed.R.Civ.P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Canada*, 831 F.2d at 925 (9th Cir. 1987). To meet the requirements Rule 56(e), the affidavit must be made on personal knowledge, the affiant must be competent to testify to the matters stated in the affidavit, and sworn or certified copies of all papers referred to in an affidavit must be attached to it. *See* Fed.R.Civ.P. 56(e); *see also Orr*, 285 F.3d at 774 n.9 (citing references omitted).

                    *i.*      *Exhibit F – Affidavit of Mailing Notice of Trustee's Sale*

Defendants' Exhibit F is an affidavit intended to authenticate and demonstrate that the "Notice of Trustee's Sale" was sent via certified mail, return receipt requested, to the Plaintiff. Although the affidavit itself does not identify the affiant, *see* ECF No. 148, Ex. F, Defendants cured the Court-noted defect via the Declaration of Amy Rawlings-Wharton, the notary public who witnessed Toni Castiglione sign the document, and who recognized Ms. Castiglione's signature based on her own personal knowledge of the affiant who was a co-worker at the time of the signing. ECF No. 156, Ex. 1, at 1. The Court finds that Ms. Rawlings-Wharton's Declaration properly authenticates Exhibit F – the affidavit of mailing notice of trustee's sale, such that Exhibit F is legally admissible for the Court's consideration.

In evaluating the evidentiary value of Exhibit F, the Court finds that sufficient evidence for a reasonable jury to determine that Ms. Castiglione had personal knowledge that the notice was sent as she declares that she was the person who mailed the notice. The affidavit specifically refers to a "Notice of Trustee Sale," testifies that a "true and correct copy" of the same is attached as an exhibit, and a copy of the document is actually attached. *Exhibit I – Affidavit of Mailing Notice of Default.*

Defendants' Exhibit I is an affidavit intended to authenticate and demonstrate that the attached "Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust" was sent via certified mail, return receipt requested, to the Plaintiff. Although the affidavit itself does not identify the affiant, *see* ECF No. 148, Ex. I, Defendants attempted to cure the Court-noted defect via the Declaration of Mandi Foht, an employee of CCLF. Ms. Foht declared that the signature was that of Christina Atha, a CCLF employee who was responsible for mailing foreclosure notices. Ms. Foht based her knowledge on her familiarity with Ms. Atha's signature and its similarity to Ms. Atha's employment agreement, which contained her signature and matched that of the affiant. ECF No. 156, Ex.2, at 1. Therefore, the

evidence is legally admissible for the Court's consideration. As the person who mailed the notice, Ms. Atha declares that she had personal knowledge that the notice was sent. Additionally, the affidavit testifies that a "true and correct copy" of the notice is attached as an exhibit, and a copy of the document is actually attached. Thus, Exhibit I provides sufficient evidence for a reasonable jury to determine that the Notice was sent to the Plaintiff. *Exhibits J, M, & P – Affidavit of Posting (Notice of Default), Affidavit of Posting (Notice of Sale); Affidavit of Service/Posting (Danger Notice).*

Defendants' Exhibit J is an Affidavit intended to authenticate and demonstrate that "a copy of the Notice of Default" was posted on the Property. Defendants' Exhibit M is an Affidavit intended to authenticate and demonstrate that "a copy of the Notice of Sale, as well as a copy of the Notice to Tenants of the Property," was posted on the Property. Defendants' Exhibit P is an Affidavit intended to authenticate and demonstrate that "a copy of the Danger Notice, as well as a copy of the Promissory Note attached to it," was served on Plaintiff and posted on the Property. Attached to the affidavits are copies of photos and alleged information about when, where, and by whom the photos were taken.

Unfortunately, these exhibits have not been properly authenticated for two reasons: first, the affidavits refer to certain notices but sworn or certified copies of the notices are not attached; therefore, an essential prerequisite to authentication has not been met. *See* Fed.R.Civ.P. 56(e); *see also Orr*, 285 F.3d at 774 n.9 (citing references omitted).[4] Second, the photos were not mentioned in the affidavits, nor were any mention made in the affidavits about when, where, and by whom the photos were taken. Therefore, the photos have not been properly authenticated. Exhibits J, M, and P are inadmissible in their current form, and cannot

---

[4] In a case concerned the sufficiency of statutory notices, what exactly was posted is of paramount importance. Thus, even if the Court were able to consider the affidavit, it does not contain any evidence that would assist the Court in reaching a determination of the merits. The Court would still be unable to determine what the posted notice contained.

be considered by the Court.

                *ii.*     *Exhibit L – Nevada Declaration of Posting in a Public Place*

Defendants' Exhibit L is an affidavit intended to authenticate and demonstrate that "a copy of the Notice of Trustee's Sale" was posted in a public place in Clark County. However, this exhibit has not been properly authenticated. The affidavit refers to a "Notice of Trustee's Sale," and does purport to attach a copy, but the submitted declaration does not actually include a sworn or certified copy of the same. Therefore, an essential prerequisite to authentication has not been met. *See* Fed.R.Civ.P. 56(e); *see also Orr*, 285 F.3d at 774 n.9 (citing references omitted). Thus, Exhibit L has not been properly authenticated, is inadmissible in its current form, and cannot be considered by the Court.

                *iii.*     *Exhibit N – Affidavit of Publication*

Defendant's Exhibit N is an affidavit intended to authenticate and demonstrate that the "Notice of Trustee's Sale" was published in "Nevada Legal News, a daily newspaper of general circulation" in Clark County, Nevada. As the Assistant Operations Manager of Nevada Legal News, the affiant, Heather Ebneter could be a person who had personal knowledge through whom the evidence of publication could be admitted. Additionally, the affidavit refers to a publication, and a copy of the document is actually attached. Thus, Exhibit F is properly authenticated and may be considered.

                *iv.*     *Exhibit O – Certificate of Mailing (Notice to Tenants)*

Exhibit O is a certification intended to authenticate and demonstrate that the "Notice to Tenants of the Property" was sent via certified mail, return receipt requested, to the Occupant of the Property. Although the affidavit itself does not identify the affiant, *see* ECF No. 148, Ex. I, Defendants attempted to cure the Court-noted defect via the Declaration of Amy Rawlings-Wharton, the notary public who witnessed Toni Castiglione sign numerous documents,[5] and

---

[5] Including Exhibit F, which has already been found to be admissible.

who recognized Ms. Castiglione's signature based on her personal knowledge. ECF No. 156, Ex. 1, at 1.  Therefore, the evidence of the affiant's identity is legally sufficient for the Court's consideration.  As the person who mailed the notice, Ms. Rawlings-Wharton could be a person who had personal knowledge that the notice was sent.  However, while the certification refers to a "Notice to Tenants of the Property," a sworn or certified copy of the same is not attached.  Therefore, an essential prerequisite to authentication has not been met. *See* Fed.R.Civ.P. 56(e); *see also Orr*, 285 F.3d at 774 n.9 (citing references omitted).  Exhibit O has not been properly authenticated, is inadmissible in its current form, and cannot be considered.

        *v.*  *Exhibit Q – Affidavit of Mailing of Notice of Default and Election/Waiver of Mediation Form*

  Defendants' Exhibit Q is an affidavit intended to authenticate and demonstrate that the attached "Notice of Default and Election/Waiver of Mediation Form" was sent via certified mail, return receipt requested, to the Plaintiff.  Although the affidavit itself does not identify the affiant, *see* ECF No. 148, Ex. I, Defendants cured the Court-noted defect via the declaration of Mandi Foht, an employee of CCLF.  Ms. Foht declared that the signature was of Christina Atha, a CCLF employee who was responsible for mailing foreclosure notices.  Ms. Foht based her declaration on her familiarity with Ms. Atha's signature and Ms. Atha's employment agreement, which contained her signature and matched that of the affiant. ECF No. 156, Ex.2, at 1. Therefore, the evidence is legally sufficient for the Court's consideration.  As the person who mailed the notice, Ms. Atha could be a person who had personal knowledge that the notice was sent.  Additionally, the affidavit testifies that a "true and correct copy" of the notice is attached as an exhibit, and a copy of the document is actually attached.  Thus, Exhibit Q is properly authenticated and may be considered.

  In sum, the Court may only consider Exhibit F – Affidavit of Mailing Notice of Trustee's Sale, Exhibit I – Affidavit of Mailing Notice of Default, Exhibit N – Affidavit of

1  Publication, and Exhibit Q – Affidavit of Mailing of Notice of Default and Election/Waiver of
2  Mediation Form.  The Court may not consider any other proffered evidence as described,
3  *supra*.

### B.    Nevada's Foreclosure Statutes

When a grantor of a deed of trust breaches the obligation contained therein, the trustee may sell the property to satisfy the obligation. NRS 107.080(1).  Nevada Revised Statute 107.080 provides the mandated notice provisions for trustee's sales.

First, the beneficiary, the successor in interest of the beneficiary or the trustee, must record a notice of default and election to sell in the office of the county recorder. NRS 107.080(2)(c).  That notice of default and election to sell must be mailed by "registered or certified mail, return receipt requested and with postage prepaid to the grantor or, to the person who holds the title of record on the date the notice of default and election to sell is recorded." NRS 107.080(3).  The grantor then has a certain number of days in which to satisfy the deficiency. NRS 107.080(2)(a) and (b).

Then, after at least three months have passed from the recording of the notice of default, the trustee must give notice of the sale, including the time and place of the sale. NRS 107.080(4).  That notice of sale must be (1) recorded, (2) personally served upon or mailed by "registered or certified mail to the last known address of the trustor," (3) posted for 20 consecutive days in a public place in the county where the property is situated, and (4) published three times, once each week for 3 consecutive weeks, in a newspaper of general circulation in the county where the property is situated. NRS 107.080(4)(a-d).  Additionally, for residential properties, the notice of default and election to sell and the notice of sale must be posted in a conspicuous place on the property not later than: (1) for a notice of default and election to sell, 100 days before the date of sale; and (2) for a notice of sale, 15 days before the date of sale. NRS 107.087(1).  Additional notice to tenants must be posted on the property and

1  failed with certificate of mailing to any tenant or subtenant actually occupying the property no
2  later than 15 days before the date of sale. NRS 107.087(3).

3  Once the sale is completed, title vests in the purchaser; upon court action, however, a
4  sale may be voided if carried out without substantially complying with the statutory
5  requirements. NRS 107.080(5). *See Rose v. First Federal Savings & Loan*, 777 P.2d 1318,
6  1319 (Nev. 1989).

7  Here, Defendants have failed to carry their initial burden to negate an essential element
8  of Plaintiff's case or show that Plaintiff cannot bear his burden of proof at trial.  In support of
9  their motion, Defendants attempted to show that they complied with statutory foreclosure
10 proceedings.  However, Defendants have not demonstrated that the notice of sale was posted
11 for 20 consecutive days in a public place in the county where the property is situated, to comply
12 with NRS 107.080(4) posting requirements.  Neither have Defendants demonstrated that the
13 notice of default and election to sell, the notice of sale, or notice to tenants were posted in a
14 conspicuous place on the property, in compliance with NRS 107.087.  Without this evidence,
15 Defendants have not negated an essential element of Plaintiff's case.

16 Defendants also assert that Plaintiff cannot prove that he did not receive notice.
17 However, Defendants ignore the fact that Plaintiff need not show that he failed to receive
18 notices, but rather that Plaintiff may succeed if Defendants cannot prove that they substantially
19 complied with the statutory requirements.  Defendants' own proffered evidence demonstrates
20 that the notices of sale indicated the sale would take place on January 1, 2011 at 1:00 p.m., but
21 the Trustee's Sale took place on March 4, 2011.  If Defendants gave Plaintiff notice of the
22 wrong date of sale, then Plaintiff can show substantial non-compliance with mandated notices.
23 Defendants have offered no explanation for the discrepancy, nor have they explained why the
24 discrepancy is immaterial.  Based on the evidence before the Court, it is wholly unclear what
25 notices, if any, Plaintiff received or whether those notices were substantially compliant with

statutory mandates.

Defendants still have not shown that proper foreclosure was effectuated such to negate an essential element of Plaintiff's case.  As Defendants have failed to meet their initial burden, summary judgment must be denied. *See Adickes*, 398 U.S. at 159–60.  Moreover, as there is still a live case, the motion to expunge *lis pendens* is also denied.

## IV. <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 148) is **DENIED.**

**IT IS FURTHER ORDERED** Defendants' Motion to Expunge Lis Pendens (ECF No. 147) is **DENIED.**

**DATED** this 17th day of June, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Court